■ MELISSA S. UHL, Respondent, v MICHAEL J. SOFIA et al., Appellants. [667 NYS2d 92] —Cardona, P. J. Appeal from an order of the Supreme Court (Teresi, J.), entered January 6, 1997 in Albany County, which denied defendants' motion for summary judgment dismissing the complaint.

This personal injury action stems from an automobile accident occurring on September 15, 1994 on Interstate Route 87 in the Town of Colonie, Albany County. According to plaintiff, defendant Michael J. Sofia, while operating a vehicle owned by defendant Linda M. Sofia, crossed into plaintiff's lane of traffic and struck the side of her vehicle pushing it into a guardrail. Plaintiff was taken to the hospital emergency room where she was treated and released.

Plaintiff commenced this action in July 1995 claiming that as a result of the accident she sustained a serious injury, as defined by Insurance Law § 5102, in that she suffered injuries

to her neck, back and right elbow. Following joinder of issue and discovery, defendants moved for summary judgment which was denied, resulting in this appeal.

According to defendants, Supreme Court erred because plaintiff's proof failed to establish that she sustained a "serious injury" related to the September 1994 accident that met the requirements of the "permanent consequential limitation of use of a body organ or member", "significant limitation of use of a body function or system" or "90/180" categories of Insurance Law § 5102 (d), as pleaded in the complaint and amplified by the bill of particulars.* In our view, Supreme Court should have granted defendants' motion with respect to the claims alleging that plaintiff suffered a significant limitation in the use of her lumbar and cervical spines and a permanent consequential limitation of use of her lumbar spine.

With respect to defendants' initial burden of establishing that plaintiff did not sustain a "serious injury" (see, Gaddy v Eyler, 79 NY2d 955, 956-957; Tankersley v Szesnat, 235 AD2d 1010), defendants submitted, inter alia, medical reports from two independent medical examiners who found no objective medical evidence to support plaintiff's complaints of continuing injuries and concluded that plaintiff's injuries stemming from the accident had resolved almost completely. Specifically, Virgilio Victoriano, an orthopedic surgeon who examined plaintiff in July 1996, averred that plaintiff had a "full range of motion of [her] shoulders, elbows, wrist joints, hips, knee and ankle joints", "no evidence of paracervical muscle spasm", "good cervical motion" and "no evidence of spasm [or] areas of tenderness" of the dorsal spine or paraspinal muscles. Although Victoriano found that plaintiff had an increased lordotic curve on her back, he opined that it was related to poor muscle tone and not the 1994 accident. Victoriano concluded that plaintiff's previous complaints were related to the accident, but found "no objective findings that support[ed] her complaints" at the time of the examination and "no evidence of functional impairment" with regard to her right arm and elbow. Victoriano noted that plaintiff's cervical strain and right elbow contusion had "resolved".

An independent medical examination was also performed by Jeffery Burdick, a psychiatrist and neurologist, in September 1996. Burdick stated that his examination of plaintiff failed to

---

* We note that although plaintiff's bill of particulars sets forth a claim that plaintiff suffered a permanent loss of use of her right arm and elbow, it appears from the record and briefs that this claim was not pursued and, in any event, was not supported in this record.

reveal any "spinal tenderness in the cervical, thoracic or lumbosacral regions". He averred that while plaintiff reported mild tightness of her cervical paraspinal muscles, those muscles had normal tone. He found "no evidence of any abnormality of the cervical spine". Burdick reported that plaintiff had a full range of motion and normal strength in all four of her extremities, including her right arm. Although he found that plaintiff had a "[m]ild cervical subluxation", he believed it was a preexisting, asymptomatic condition. Burdick opined that while plaintiff suffered a lumbosacral strain at the time of the accident, "it ha[d] resolved almost completely". He also noted that "[h]er right elbow injury resolved completely within a week of the accident and she ha[d] not had any further difficulty with the right upper extremity". In sum, Burdick found "no objective evidence on examination of any permanent limitation of the use of [plaintiff's] extremity or her neck or back".

Along with plaintiff's affidavit detailing her complaints of pain, the only medical proof offered in opposition to defendants' motion was a nonspecific and conclusory affidavit from her chiropractor, Brad Elliott, who stated without substantive elaboration that plaintiff "received a limitation in the use of her lumbar spine and cervical spine as well as her right elbow". Significantly, serious injury must be established through "competent medical evidence based upon objective medical findings and diagnostic tests" (*Eisen v Walter & Samuels*, 215 AD2d 149, 150; *see, Decker v Stang*, 243 AD2d 1033). Here, although Elliott stated that his conclusions were based principally upon the objective findings of "muscle spasm", "trigger point tenderness" and "motion loss", he failed, *inter alia*, to identify the tests he used in diagnosing plaintiff, the dates he made his findings, the locations of the trigger points and spasms, the degree of limitation or any treatment recommendations. The mere fact that Elliott used the word "permanent" in his affidavit was insufficient to raise a question of fact as to whether plaintiff sustained a permanent consequential or significant limitation in relation to the September 1994 accident (*see, Fuller v Steves*, 235 AD2d 863). Thus, plaintiff's proof with regard to these categories falls short of establishing the requirements of a "serious injury" within the meaning of Insurance Law § 5102 (d).

Turning to plaintiff's claim that she suffered from a medically determined injury of a nonpermanent nature as a result of the September 1994 accident which prevented her from performing substantially all of the material acts constituting her usual and customary daily activities for at least 90 of the

180 days immediately following the injury (*see,* Insurance Law § 5102 [d]), we conclude that Supreme Court properly denied that portion of defendants' motion. In Elliott's affidavit, he indicated that after plaintiff initially treated with him on September 23, 1994, he diagnosed her as having "sustained whiplash syndrome/cervical sprain, cervical subluxation complex, lumbar sprain/strain and multiple contusions" and that she was totally disabled from her employment as a nanny until approximately October 7, 1994. Elliott reexamined plaintiff on October 10, 1994 and extended her disability to January 4, 1995, when plaintiff returned to work. In her affidavit, plaintiff claims that during this period she could not perform any kind of lifting, head movement or prolonged sitting or standing without pain and that her athletic and social activities were curtailed. We find this proof to be sufficient to raise arguable questions of fact as to plaintiff's 90/180 claim (*see, Tankersley v Szesnat,* 235 AD2d 1010, *supra; Richards v Toomey,* 221 AD2d 754, 755).

Mikoll, Casey, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion to dismiss that part of the complaint alleging that plaintiff sustained a serious injury in all but the 90/180 categories; motion granted to that extent; partial summary judgment awarded to defendants and said claims dismissed; and, as so modified, affirmed.