■ JESSILEE J. JONES, an Infant, by LINDA JONES, Her Parent, Respondent, v NORWICH CITY SCHOOL DISTRICT, Appellant. [725 NYS2d 131] —Peters, J. Appeal from an order of the Supreme Court (Dowd, J.), entered August 22, 2000 in Chenango County, which denied defendant's motion for summary judgment dismissing the complaint.

Plaintiff (born in 1982) commenced this action to recover for personal injuries she incurred while riding in a school bus on October 18, 1997 in the Town of North Norwich, Chenango County. According to plaintiff, her right shoulder impacted against the seat in front of her two times in succession when the bus stopped abruptly and ultimately collided with the bus in front; her seatbelt was inoperable.

Plaintiff's first treatment was at the Chenango Memorial Hospital two days after the accident upon a referral by the school nurse when plaintiff reported severe pain in her right shoulder. Barbara Martin, a nurse practitioner at the hospital, recorded plaintiff's complaints which included both her inability to internally rotate or abduct the right shoulder and tenderness over the distal clavicle. Martin diagnosed plaintiff with a shoulder strain, prescribed a temporary course of treatment and made an appointment for her to see Anthony Cicoria, an orthopedic surgeon.

On October 29, 1997, plaintiff was seen by Melissa Tworkowsky, a physician's assistant associated with Cicoria. She diagnosed plaintiff with a capsular strain to the right shoulder, prescribed a course of physical therapy and recommended that she refrain from physical education classes and sports until further evaluation. At the follow-up examination on November 19, 1997, Tworkowsky noted an improvement in plaintiff's range of motion, but opted to continue with the restriction on physical education and sports as well as the conservative course of physical therapy. Progress notes from plaintiff's physical therapist detail consistent weaknesses in the rotator cuff musculature and complaints of pain, yet she was discharged on December 12, 1997. Physical therapist John Garzione found her right shoulder within normal range of motion and near normal strength.

Approximately two months later, plaintiff returned to Cicoria's office. This time, she was treated by Chris Drinkwater, an orthopedic surgeon, who diagnosed her with an AC joint sprain. Although he noted that she could return to all activity and had full range of motion, he advised her that she will experience residual symptoms for a few more months. In February 1998, plaintiff traveled to Disney World to participate in a marching band parade, and in April 1998 went on a family vacation to Florida. According to plaintiff, she continued to experience pain in the right shoulder and refrained from numerous recreational activities due to such pain.

In September 1998, plaintiff returned to Cicoria's office complaining that the residual symptoms had not subsided. When examined by Tworkowsky, plaintiff explained that the right shoulder really never improved. Tworkowsky's examination revealed tenderness along the anterior glenhumerol joint of the right shoulder, continued pain and a decrease in range of motion. An MRI was ordered and plaintiff was advised to schedule an examination with Cicoria.

According to Cicoria, the MRI showed a significant tendino-

sis and capsular redundancy of the right shoulder. His physical examination on November 3, 1998 confirmed that she was suffering from a multidirectional instability of the right shoulder which had prevented her full participation in physical activities since the accident. Noting that the course of treatment until that time was extremely conservative, he ordered a three-month aggressive physical therapy program, hoping to avoid the necessity of surgery. Following such therapy, Tworkowsky concluded that it failed to alleviate plaintiff's symptoms and that there was multidirectional instability in both shoulders with the right being symptomatic as a result of the accident. When Cicoria's subsequent examination revealed a continued lack of improvement, he performed a right shoulder arthroscopy and open inferior capsular shift operation for stabilization on June 28, 1999. With an immediate reference to physical therapy, Cicoria continued to treat plaintiff.

This action was commenced in December 1998. On or about November 30, 1999, Cyril Shea, Jr., an orthopedic surgeon, conducted a record review of plaintiff's treatment following the accident and concluded that plaintiff's injuries were relatively minor, being more developmental in nature as opposed to trauma induced. Upon this basis, defendant moved for summary judgment contending that plaintiff did not suffer from a permanent consequential limitation of use of her right shoulder or sustain an injury which prevented her from performing substantially all of the material acts which constitute her usual and customary daily activities for not less than 90 days during the 180 days immediately following the accident (*see*, Insurance Law § 5102 [d]). Finding that the conflicting medical opinions required a jury's resolution, Supreme Court denied defendant's motion and this appeal ensued.

As the proponent of the motion, defendant had the burden of establishing that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) (*see*, *Rath v Shafer*, 267 AD2d 565; *Delaney v Lewis*, 256 AD2d 895, 896). This burden was satisfied upon the submission of Shea's report which so concluded. He reviewed the emergency room records, the office notes of Cicoria, Drinkwater and Tworkowsky, as well as the MRI report. Focusing on plaintiff's discharge from physical therapy and the conclusion reached by Tworkowsky that plaintiff suffered from a multidirectional instability of a bilateral nature, he opined that the evidence did not support her contention that she sustained a serious injury within the meaning of the statute (*see*, Insurance Law § 5102 [d]).

With the burden now upon plaintiff to set forth " ' "competent

medical evidence based upon objective medical findings and diagnostic tests" ' " (*Burnett v Zito*, 252 AD2d 879, 881, quoting *Tankersley v Szesnat*, 235 AD2d 1010, 1012, quoting *Eisen v Walter & Samuels*, 215 AD2d 149, 150), we find that burden satisfied by the submission of Cicoria's affidavit with its supporting documentation. Cicoria explained that he initially chose to implement a conservative course of treatment to avoid surgery. Despite plaintiff's continuing progression and faithful compliance with the treatment plan, her symptoms were not alleviated. Although the medical and physical therapy records denote significant improvement at times, there were marked swings in strength and range of motion of her right shoulder. The MRI showed significant tendinosis and capsular redundancy of the right shoulder which confirmed the necessity for Cicoria to perform shoulder arthroscopy and an open inferior capsular shift operation for stabilization. At all times, Cicoria averred that it was his opinion that plaintiff suffered from a multidirectional instability of the right shoulder that was causally related to the accident and led to the requirement for stabilization surgery. This evidence, further buttressed by plaintiff's deposition testimony, demonstrated more than " 'subjective complaints of pain unsupported by credible or objective medical evidence or documentation' " (*Delaney v Lewis*, 256 AD2d 895, 897, *supra*, quoting *Kimball v Baker*, 174 AD2d 925, 926) or simply " 'a mild, minor or slight limitation of use' " (*Booker v Miller*, 258 AD2d 783, 784, quoting *King v Johnston*, 211 AD2d 907).

We disagree, however, with Supreme Court's finding that plaintiff sustained her burden on the claim that her injuries prevented her from performing substantially all of the material acts which constitute her usual and customary daily activities for not less than 90 days during the 180 days immediately following the accident (*see*, Insurance Law § 5102 [d]). The limitations placed upon her with respect to sports and physical education, even for an extended period, is not enough (*see*, *Lashway v Groshans*, 241 AD2d 832, 834; *see also*, *Licari v Elliott*, 57 NY2d 230). For these reasons, a modification of the order in this regard is required.

Cardona, P. J., Crew III, Spain and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant's motion for summary judgment dismissing that part of the complaint alleging that plaintiff sustained a serious injury in the 90/180 category; motion granted to that extent, partial summary judgment awarded to defendant and said claim dismissed; and, as so modified, affirmed.